98 So.2d 59

**Homer RICHARDSON**

v.

**STATE.**

I Div. 735.

Court of Appeals of Alabama.

Aug. 13, 1957.

Rehearing Denied Aug. 27, 1957.

Scott & Porter, Chatom, for appellant.

John Patterson, Atty. Gen., Bernard F. Sykes, Asst. Atty. Gen., and Chas. B. Bailey, Jr., Livingston, of counsel, for the State.

HARWOOD, Presiding Judge.

The jury trial of this appellant under an indictment charging murder in the first degree resulted in a verdict and judgment of guilty of murder in the second degree. After an adverse ruling on his motion for a new trial the appellant perfected his appeal to this court.

The evidence presented by the State tended to show that the deceased, Fletcher Webb, was shot in the appellant's yard about 9 or 9:30 in the morning. About five minutes after the shooting one Bo Reed passed near appellant's home, was hailed by appellant, who informed him he had killed a man, and was requested to call the sheriff.

In response to Reed's call Sheriff Lee Clark and Deputy Sheriff Henry Clay Locke, of Washington County, and Highway Patrolmen Danley and Ashcraft went to appellant's home.

Here they found the deceased lying on his back in the yard of the appellant's home, toward the west end of the house. There was a bullet wound through his upper right arm, and in the right side of his chest, the position of the wounds in his arm and chest indicating the same bullet had made all of them.

We interpolate here that the appellant testified that no one had touched the body of deceased after the shooting until the officers arrived, and that conditions then were the same as immediately after the shooting.

The officers examined the body of the deceased, and the area. No weapon was found. In the right hand pants pocket of deceased they found an ordinary pocket knife, an unassembled safety razor, a box of razor blades, and a penny.

The officers interviewed the appellant, his wife, and Homer Richardson, Jr., the appellant's eight year old son. After proper predicate, the substance of the statements of these parties was as follows:

The appellant stated he had picked the deceased up on the road as he was returning to his home after buying groceries. He agreed to take the appellant to his home if he would behave himself. The deceased had a bottle of whiskey with him. The deceased was drinking, and appellant took two drinks with him.

Upon arrival at appellant's home his wife made coffee. Appellant went into another room and played his radio. The deceased went into the yard where Homer, Jr., was playing.

In a few minutes Homer, Jr., began yelling for help. Mrs. Richardson went out on the porch, and deceased cursed her and threatened to kill her if she came further. She called to appellant. He appeared with a rifle.

According to appellant he ordered the deceased to "get gone." Instead, the deceased started on him with a knife, and he shot him.

In a sworn written statement given the officers the appellant stated the deceased "wheeled and looked like he was going to come toward me, and I shot him."

At the trial the appellant testified that the deceased was coming toward him with a knife when he shot, and if he did not mention a knife in the statement he gave the next morning, or that the deceased was beating his boy, it was because the officers did not put it in the statement signed. He did not remember whether the statement was read to him or not before he signed it.

Also at the trial Homer, Jr., testified that when the deceased came into the yard where he was playing the deceased began hitting him on his back with his fist for no reason at all. It was then he yelled for help. When his mother came on the porch the deceased cursed her and threatened to kill her if she came further. When his father came out of the house the deceased turned him loose and started toward his father. He had his hand raised and he saw part of a knife in it, though he did not see a blade. The deceased did not have a knife when he was beating him, but got it out of a pocket when his father appeared. On cross examination this witness stated he did not know what pocket the knife came from.

In rebuttal the investigating officers testified that when they interviewed Homer, Jr., at the scene of the killing he told them that "Uncle Fletcher" (the deceased) had not struck him, or bothered him in any manner when he was in the yard that morning.

The evidence further shows that the deceased was a stocky man weighing 150 to 155 pounds. He led a casual or vagabond sort of life, and though married and the father of several children he apparently felt little responsibility toward his family, but on the other hand, slept wherever night fall caught him, and with whoever would take him in.

The appellant is thirty one years of age, six feet tall, and weighs 220 pounds.

A large number of character witnesses testified that the deceased's reputation for peace and quietude was bad; that he was violent and turbulent when drinking.

The State also introduced a number of character witnesses who testified that the appellent's reputation in his community was bad.

While there was not direct proof that this killing took place in Washington County, there was testimony as to the location of appellant's home—that it was on the Chatom-Seaboard road. We judicially know that these two towns are in Washington County. The appellant testified he lived in Seaboard. The appellant testified his home was located between McIntosh and Topton, which places we judicially know are in Washington County. This evidence in itself was amply sufficient to enable the jury to reasonably infer that the killing took place in Washington County.

■ This aside, the matter was not called to the court's attention by a request for the affirmative charge based on failure to prove venue. This matter cannot be raised for the first time on motion for a new trial, or on appeal. Circuit Court Rule 35, Code 1940, Tit. 7, Appendix; Simmons v. State, 36 Ala.App. 36, 53 So.2d 398.

In brief counsel has specified some 17 alleged errors. In error No. 5 counsel assert that the trial court erred in admitting into the jury room as evidence, without defendant's knowledge, a photograph purporting to depict the wounds inflicted, when such photograph had not been offered or admitted into evidence.

The photograph shows deceased, from the waist up, on a table. The photograph was made by Nelson Grubbs, Assistant State Toxicologist, after the body had been removed to an undertaking establishment in Citronelle. Mr. Grubbs testified as to the accuracy of the picture. It merely shows the bullet wound through the arm, and a small puncture on the right side of the chest. There is no blood evident, and, as such pictures go, it is not gruesome. Innumerable witnesses testified as to the wounds.

This aside, we do not think this matter is before us for review.

The picture was not offered or received in evidence, but was merely identified by Mr. Grubbs. No further reference appears in the record to this picture.

■ One of appellant's grounds in his motion for a new trial is that: "The court erred in admitting in evidence offered by the State a picture identified as State's Exhibit No. C to the admission of which in evidence this defendant object and which objection was overruled by the Court." Such ground falls far short of stating that the picture went with the jury. Apparently no evidence was submitted on the motion for a new trial, for none appears in the record. We of course are bound by the record submitted to us. It fails to show that the photograph was taken to the jury room when the jury retired, or even that it was ever offered in evidence, formally, or informally, by use during the trial. See Kabase v. State, 31 Ala.App. 77, 12 So.2d 758.

■ During the cross examination of State's witness Henry Clay Locke, testimony was elicited to the effect that the deceased's reputation for peace and quietude was "a little bad;" that his reputation was "a little rough," and that he had heard of his being in fights, which he "mostly lost."

On redirect examination the record shows the following:

"Q. Did you ever hear of him taking undue advantage of anyone?

"Mr. Porter: We object.

"Judge Pelham: Overruled.

"Mr. Porter: Except.

"A. No, I haven't."

This evidence went merely to the witnesses' ability to measure reputation, and in view of the witnesses' qualified statements as to deceased's character on cross examination was appropriate in clarifying

the witnesses' direct testimony along this line. See Mullins v. State, 31 Ala.App. 571, 19 So.2d 845.

■ After stating his qualifications Mr. Grubbs, the Assistant State Toxicologist who performed a post mortem examination of deceased, was permitted to testify, over the appellant's objection, that the bullet wound he found in the body was, in his opinion, sufficient to cause death. Clearly, no error resulted in this ruling by the court. Police and Firemen's Ins. Ass'n v. Mullins, 260 Ala. 173, 69 So.2d 261. Furthermore, all the evidence establishes without contradiction that the appellant shot and killed Fletcher Webb.

It appears that on a night about two months before this killing the deceased was at Limus Reed's house. This appellant drove up to Reed's house and called for the deceased, who went out of the house. The appellant asked deceased "How come him to twist Nonie's arm?" (Nonie is appellant's wife.) The deceased denied he had done so, and the two called each other liars. The deceased started to step over a fence between him and appellant, but desisted in this effort and started back in the house. A rifle was fired at this time, and deceased yelled to the appellant that he did not have the guts to shoot him, and cursed the appellant. Reed at this point persuaded the deceased to come back in the house, and later assisted appellant in starting his truck in order to leave.

In this setting George Knapp, a witness for the State, was permitted to testify, over appellant's objection, that on a later date, when he was with the appellant, Reed rode up and told the appellant to never come shooting around his house again. The appellant replied he had not hurt anything, and Reed told him nevertheless not to come shooting around his house.

Also, during the examination of State's witness Mose Parnell, the court overruled the appellant's objection to a question as to whether the appellant, about a week before this killing, had not come to Parnell's home inquiring for Webb, and had stated that deceased had stolen a gallon of whiskey and two cartons of cigarettes from him and he wanted to see him about it.

■ The evidence elicited in the two above instances was properly admitted, in that it tended to show malice, motive, or ill feeling between the deceased and appellant, and such evidence is admissible in a homicide prosecution. Webb v. State, 26 Ala.App. 241, 157 So. 262; McDonald v. State, 241 Ala. 172, 1 So.2d 658; Ray v. State, 253 Ala. 329, 45 So.2d 4.

During the direct examination of appellant's wife the court, on motion of the solicitor, excluded her answer that seven or eight months before the killing the deceased had come to her home and "twisted her down in the yard."

The court excluded this testimony with the statement that "the evidence shows they were on friendly terms and drinking coffee together that morning."

We pretermit consideration of whether the court properly excluded this evidence, for the record shows that immediately following this ruling the witness was permitted, without objection, to testify in considerable detail that on the occasion mentioned the deceased had come to her home, when appellant was absent, and had "twisted her down on the ground," had hit her a time or two, and that she was pregnant at the time.

The record shows the following during the direct examination of the appellant:

"Q. Did he ever tell you anything about carrying a pistol all time?

"Mr. Gilmore: Object to counsel leading the witness.

"Judge Pelham: Sustain the objection.

"Q. Had he ever made any statement to you about a pistol? A. Yes, sir.

"Q. What did he say about it? A. He was just bragging around something about his thirty-eight pistol and dirk and what he would do with it."

The question to which the objection was sustained on direct examination was probably leading. Regardless, it is clear that in the two following questions and answers, the appellant received the full benefit of the evidence sought by the question to which the objection was sustained.

Defendant's requested charge No. 11 was refused without error. This charge is identical with charge No. 11 considered in Resmondo v. State, 24 Ala.App. 566, 138 So. 425, and its refusal was held to be error.

However, in the Resmondo case the undisputed evidence showed that an unprovoked, violent, and active attack was being made upon the accused at the time the fatal shot was fired. This is not so in the present case, in that certain inconsistencies in the defense evidence would tend to show that no attack was made by the deceased.

The deceased was some 15 feet from the appellant when he was shot. In his statement to the officers made shortly after the shooting the appellant stated the deceased "looked like" he was going to come on him, though in his testimony on the trial he stated the deceased was advancing on him at the time of the attack; the appellant made no mention of a weapon in his interview with the officers, though he testified at the trial the deceased had something in his hand that looked like a knife, though he saw no blade.

Homer Richardson, Jr., when interviewed by the officers told them that the deceased had not molested him in any way in the yard; at the trial he testified that the deceased was beating him just before the shooting, and turned him loose only when the appellant appeared.

And lastly, no weapon was found at the scene, and the accused's pocket knife was found unopened in his pocket. The evidence also showed that conditions remained the same from the time of the shooting until the arrival of the officers.

■ In view of the fact that the charge assumes that an attack was being made by the deceased, it was properly-refused in this case.

For the same reasons, the court did not err in refusing appellant's requested charge No. 10.

The record shows the following exception taken to a portion of the court's oral charge:

"Judge Pelham: Are there any exceptions to the oral charge?

"Mr. Porter: I except to that portion of Your Honor's charge substantially as follows: The defendant had no right to shoot if Fletcher Webb had only a pocket knife some ten or fifteen feet away from the defendant.

"Judge Pelham: I will leave that as it is."

The above portion must of course be read in its entire context in order to determine if it was erroneous to the extent requiring a reversal of this judgment.

The entire paragraph in which the above quoted portion appears is as follows:

"Now, you have heard the testimony in this case about the position of the people down there at that time. Was Homer Richardson in any danger at the time he fired that rifle? That is for you to say from this testimony. Was Fletcher Webb advancing on him

with a weapon of any kind that was dangerous to the body or to the life of Homer Richardson? If he was in the home of Homer Richardson, he had no burden on him, no duty on him, to retreat from it, but if his life or body was not in danger of grievous bodily harm, he had no right to shoot at Fletcher Webb off some ten or fifteen feet from him with no weapon other than a pocket knife."

In its entire context the portion of the charge excepted to is to the effect that the appellant had no right to shoot Fletcher Webb off some 10 or 15 feet from him with no weapon other than a pocket knife, *if* his life or body was not in danger of grievous bodily harm.

■ This statement while not entirely correct was at most only misleading in that it omits the appellant's right to act as a reasonable man on the appearance of things at the time.

However this latter principle, i. e., the right of appellant, as a reasonable man, to act on apparent danger to himself, or to his wife or child, was fully covered in appellant's requested charge No. 15, which was given by the court.

■ The evidence presented by the State was sufficient, if believed by the jury to the required degree, to support the judgment and verdict. No error therefore resulted from the court's refusal of appellant's requested charges which were affirmative in nature, nor from the court's denial of appellant's motion for a new trial on those grounds questioning the sufficiency of the evidence.

Several other points are argued in appellant's brief. We have concluded they are without merit and that no useful purpose would be served by a discussion of them.

Affirmed.