260 So.2d 412

**Jerome DALY**

**v.**

**STATE.**

**8 Div. 57.**

Court of Criminal Appeals of Alabama.

Jan. 11, 1972.

Rehearing Denied Feb. 8, 1972.

Cervera & Folmar, Troy, for appellant.

The State's evidence tends to show that appellant spent the afternoon of August 8, 1968, in and around Rainey's Tavern in Elkton, Tennessee, which is a short distance over the Alabama state line; that later in the afternoon, after having eaten supper with one of his friends, he came back to the tavern for a short while; and that he then started for home driving his sister's 1961 cream colored Ford automobile.

It appears that during the afternoon and up until he finally left the tavern to go home he had drunk several beers. The exact number was more or less in doubt but there was some evidence that he was under the influence of alcohol when he started home. On his way home he was stopped and his driver's license was checked by two local deputies near the overpass where the traffic leaves the interstate highway going to the Elkton Road. The deputy sheriffs who stopped him allowed him to continue on his way but he was followed for some distance by a patrol car driven by Trooper Patterson of the State Patrol. Patterson testified that appellant's automobile was at times weaving back and forth on the road; that he and his partner, Auxiliary Trooper Padgett, did not stop appellant, who later turned off a side road toward his home; that within a short time, the patrolmen had their attention called to an automobile which was taking Rickey Daly, a young boy who had been struck by a car, on an emergency run to the hospital; and that the partolmen guided this automobile to the hospital.

The State's testimony further tends to show that Rickey Daly, his brother Jeff Daly, and Kenneth Hunter were walking along the Elkton Road on the right side and off the used portion of the road when an automobile approached from the rear, ran off the used portion of the road some short distance, and struck Rickey Daly, whereby he was injured and later died from the injuries suffered. At the time he was struck, the injured boy was carrying some groceries and a carton of soft drinks. Some of the soft drink bottles were broken by

MacDonald Gallion, Atty. Gen., and W. Mark Anderson, III, Special Asst. Atty. Gen., for the State.

**PER CURIAM.**

The appellant was convicted in the Circuit Court of Limestone County of manslaughter in the second degree and sentenced to ninety days imprisonment in the county jail. From this judgment he appeals.

the impact and the fluid was spilled out. The witnesses, Jeff Daly and Kenneth Hunter, testified that the car was tannish in color and had big round tail lights and was moving at a rapid rate of speed. Some of the testimony tended to show that the car was travelling at approximately seventy miles per hour.

It further appears from the State's testimony that this accident happened at about 8:30 in the evening of August 8, 1968. All of the witnesses for the State, and the appellant himself, testified that the car was either beige, cream colored or light tan and that it was a 1961 Ford.

Later in the evening State Trooper Patterson and Sergeant Hancock, a State Investigator, talked with appellant at his home. To questions asked by Trooper Patterson appellant gave answers of a negative nature that if he had hit someone he didn't remember it, and that he must have hit a mail box somewhere to put the dents found in the fender and hood on the right side of the car. According to the testimony of Trooper Patterson the appellant made the voluntary statement, "What was that kid's name I hit?".

One of the State Toxicologists, Dr. Vann V. Pruitt, Jr., testified that he examined the automobile on the night of the accident and found sticky brown colored substance on the fender and right side of the car. He stated that he could not identify this substance. He said that he found dents in the fender and hood of the car and a small amount of paint ground into the injured boy's trousers which matched a sample of the paint which he took from the car.

The appellant denied that the automobile he was driving struck the boy and set up an alibi, which was supported by his witnesses, that at the time of the occurrence he had already reached his home and was engaged in preparing his National Guard equipment for active duty the next day. He did not deny that he drank some beer during the afternoon and did not deny driving along the road where the boy had been struck, but emphatically denied any participation in the act.

The testimony is voluminous and this Court will not attempt to go into further detail.

"Manslaughter in the second degree is defined as the unlawful killing of another human being, without malice and without the intent to kill or to inflict the injury resulting in death, but accidentally committed by the accused while he was doing an unlawful act amounting to a misdemeanor, or accidentally committed by the accused while he was doing a lawful act, but in a grossly negligent or improper manner." Jones v. State, 21 Ala.App. 234, 109 So. 189.

When the State rested its case, the appellant made a motion to exclude the testimony, which motion was overruled by the court. Under the tendencies of the evidence for the State, the motion was properly overruled and the case submitted to the jury.

After the verdict was given the appellant filed a motion for a new trial, which was overruled.

The appellant insists that the case should be reversed because of the failure of the State to prove venue. This is a matter which may be proven by circumstantial evidence and there is some evidence in the record tending to prove the location in Limestone County, Alabama, but aside from this the matter was not called to the court's attention before argument by a request for the affirmative charge based on this failure by the State to prove venue. This matter cannot be raised for the first time by a motion for a new trial or an appeal. Rule 35, Circuit and Inferior Court Rules, Tit. 7, Appendix, Code of Alabama, 1940, as recompiled 1958; Richardson v. State, 39 Ala.App. 207, 98 So.2d 59, cert. denied 266 Ala. 699, 98 So.2d 65; Payne v. State, 40 Ala.App. 493, 115 So.2d 670.

State's witness Padgett, an Auxiliary Trooper who was riding with Trooper Patterson on the night of this occurrence, tes-

tified that while he was standing in the yard of the home of appellant near the white Ford car, the appellant walked up to him and said, without any other words being spoken by either of them, "What was the kid's name I hit?". According to Padgett, he did not interrogate or talk with appellant at all. Padgett further testified that this occurred after Officer Hancock had read appellant's constitutional rights to him from a card.

Appellant argues error by the court in admitting the testimony of Trooper Patterson of statements made by appellant when questioned by Patterson at the home of appellant after the occurrence. The record shows the following testimony by Patterson outside the presence of the jury:

"BY MR. NELSON:

"Q. Did you warn him of his constitutional rights, Bob?

"A. Yes, I did. When he came to the door I told him his car was suspected of being involved in something, and I told him of his rights.

. . .

"Q. What did you tell him?

"A. I told him that his car had been involved in something and we thought he was a suspect, and I told him that he didn't have to make any statement to me that he didn't want to. I told him he had the right to remain silent and that if he wanted counsel that counsel could be obtained for him before he told us anything. And he said he knew all that.

"Q. He said he knew all about that, huh?

"A. He knew all of that, or words to that effect. He already knew it.

"Q. Did you tell him—go on then and tell him that if anything he said to you could be used against him in a court of law?

"A. Yes, sir, I did.

. . .

"Q. Go ahead and tell us what rights you warned him of the best you can remember and sit there if you have to make your list and check them off.

"A. The best I can remember I told him that he didn't have to make a statement if he didn't want to make one. I told him that any statement that he did make would be used against him in a court of law. I told him if he wanted a counsel, counsel could be obtained for him. And he said he understood that.

. . .

"Q. Let me ask you this question, Bob; did you or did you not at that time and occasion tell this defendant that he had a right to remain silent?

"A. Yes, sir, I told him that when I first started talking to him.

"Q. All right. Did you or did you not tell him that anything he said could be used against him in a court of law?

"A. Yes, sir. I told him that."

The statements admitted over objection were, when asked if he struck a child, "If I did, I don't remember it," and, "I must have hit a mail box." These answers were negative in nature. However, it appears that the *Miranda* rule was complied with and there was no error by the court in admitting the testimony. Elrod v. State, 281 Ala. 331, 202 So.2d 539; Beverly v. State, 281 Ala. 325, 202 So.2d 534.

Before the testimony was offered the attorney for appellant had examined the witness with regard to this matter on voir dire out of the presence of the jury and no objection was made on voir dire to the ruling of the court. Alleged error in the admission of evidence cannot be raised for the first time by motion for a new trial or on appeal. Smith v. State, 40 Ala.App. 600, 119 So.2d 202, cert. denied 270 Ala. 741, 119 So.2d 203.

In brief, the attorney for appellant complains of the actions of the prosecuting attorney in asking illegal questions and re-

flecting on the conduct of one of the attorneys for the appellant.

■ We have examined the matters complained of as shown by the record. Objections were sustained to those questions calling for illegal testimony and the court, in some instances, instructed the jury to disregard the erroneous matter. In one or more instances objection to questions came after the witness had answered. Failure to object before a witness answers an illegal question does not put the court in error (unless it is shown that the answer is made so quickly as to preclude objection) even if a motion to exclude is overruled. Douglas v. State, 42 Ala.App. 314, 163 So.2d 477.

The case lasted for the better part of a week and the record is replete with argument between counsel for the State and appellant and not a little bickering. The court was in a better position than this Court to see, hear, and understand the atmosphere of the trial. We do not think his actions, within his wide discretion, in the matters complained of were erroneous.

This case was submitted to the jury on May 8, 1969, at 5:55 P.M. The jurors were allowed to make or send telephone calls to their families regarding their likelihood of being at the courthouse late. After being taken to supper they resumed their deliberations at 8:30 P.M. At 1:27 A.M. on May 9, 1969, they reported back to the courtroom and stated that they were unable to reach a verdict. The record shows the following:

"THE COURT: Ladies and gentlemen, have you reached a verdict?

"THE FOREMAN: No, sir, we have not.

"THE COURT: I will ask you how far you are apart. I don't want you to tell me any number or anything; do you think there is any possibility that you can reach a verdict tonight?

"THE FOREMAN: I don't think so.

"THE COURT: Is one of the gentlemen sick?

"ONE JUROR: Yes, sir, just fatigued.

"THE COURT: Just fatigued?

"ONE JUROR: Yes, sir.

"THE COURT: I am sure all of you are. Ladies and gentlemen, you have had the case approximately six hours, I suppose. Is there a wide gulf between you?

"THE FOREMAN: Yes, sir.

"THE COURT: Let me see the attorneys up here, please, sir.

(Whereupon counsel approached the (bench and an off the record discussion (was had after which the following oc-(curred:

"THE COURT: Ladies and gentlemen, do you think there is a possibility of you reaching a verdict in this case?

"THE FOREMAN: Your Honor, it hasn't changed. The vote hasn't changed.

"THE COURT: In how long, please, sir?

"THE FOREMAN: Since we went in.

"THE COURT: You mean since the first time you voted?

"THE FOREMAN: Yes, sir.

"THE COURT: Well, ladies and gentlemen, you know what the procedure will be if you can't reach a verdict. It means that it will have to be submitted to another jury and have to go through the same thing all over again. I don't know at this time of any other evidence that any other jury would have.

"Of course you know it's been approximately 40 or 50 witnesses testified in the cause this week, and to my knowledge most of the evidence that was available in this cause has been made available to you on the days you have heard the case. Are you having any particular problem with the law?

"THE FOREMAN: No, sir, I don't think so.

"THE COURT: In other words, you are in agreement and you understand

what the proposition of law as applied to this case is?

"THE FOREMAN: Yes, sir.

"THE COURT: Mr. Drawbaugh, you don't feel like that you could deliberate any more tonight?

"JUROR DRAWBAUGH: Your Honor, I will try my best.

"THE COURT: Well, sir, we don't want you to make yourself sick. I know it's been a hard week and a hard day for everybody and—had you rather go home and come back tomorrow and see if you can reach a verdict?

"JUROR DRAWBAUGH: No, sir, if it's possible, I had rather finish it tonight.

"THE COURT: Well, would you like to take a little stretch break outside and get some fresh air?

"JUROR DRAWBAUGH: It might help.

"THE COURT: Bailiff, you and the Sheriff—I'm going to ask you to deliberate a little bit longer, ladies and gentlemen, I know it's been an imposition on you and everybody is tired and give out, but like I say, this same thing will have to be presented to another jury, and there is a lot of time and money and expense involved and like I said you have heard a lot of witnesses and there is a lot of evidence in the case and the Court is of the opinion that you have sufficient evidence before you to reach a verdict in this case. I'm not asking any of you to give up any of your convictions, but if you will remember as I have charged you, that you should consider this case in its full aspects as you have it. So I will let the Sheriff and the bailiff let you get a little exercise. I know being cooped up in there that you are tired and then I will ask you to come back and try it for a while longer and then if you report to me that you are just hopelessly deadlocked and you see no possibility at all to reach a verdict, then we will have no alternative but to declare a mistrial and

submit this to another jury, but it has to end somewhere.

"So bailiff, if you and the Sheriff will take them out and let them get some air outside and I will ask you then to come back and try it for a little while longer."

The appellant contends that the jury was coerced into reaching a verdict by the remarks of the court, wherein reversible error was committed. The verdict was reached at 3:02 A.M. No exception was reserved to the court's instruction. No ground of Daly's motion for new trial raised any claim of error in keeping the jury together for deliberation until such an early morning hour.

Hence, no ruling was had from the trial judge to revise his instruction or to set aside the verdict. Thus we are confronted with an unprotected record. See Meadows v. State, 182 Ala. 51, 62 So. 737.

The court refused twenty written charges requested by appellant. The refusal to give charges covered by the oral charge of the court or given written charges is not error. Myrick v. State, 21 Ala.App. 372, 108 So. 633.

Charges 35, 36 and 37 were affirmative in substance and were properly refused as the evidence presented a jury question.

Charges 9 and 11 were character charges and covered by the oral charge of the court.

Charges 1, 22, 23, 25, 26, 40, 41 and 42 were on the rule as to reasonable doubt and the presumption of innocence were covered in sustance by the oral charge and several given charges.

Charge 21 on the rule wherein the evidence is circumstantial is covered in substance by given charges 12 and 13.

Charge 33 with regard to the defendant as witness for himself was covered by the oral charge.

The record in this case of 691 pages has been examined by the Court and we find no error of a reversible nature.

The foregoing opinion was prepared by W. J. Haralson, Supernumerary Circuit Judge, and adopted by this Court as its opinion.

Affirmed.