TYSON, Judge.
On Saturday, April 2, 1977, Michael’s Jewelry Store in Gadsden, Alabama, was robbed. This robbery also involved several employees and customers within the store at the time of this incident.
In June of 1977, the Grand Jury returned five indictments, each charging the appellant with the robbery of different persons within the store. All five indictments were consolidated for trial at the request of the appellant, and the trial jury was instructed to return separate verdicts in each case. Each found the appellant guilty, as charged, and fixed punishment at ten years imprisonment in each case. The trial court *674 then set sentence accordingly in these cases to run concurrently.
Ronald Thomas testified that he was the watch repairman and manager of Michael’s Jewelers, located in Etowah County, Alabama, on the date in question. He stated that, around 9:00 a. m., a black male came in the store and inquired about picking up a watch. Mr. Thomas said that he went to the back of the store to look for this watch and noticed that the man had followed him to the rear of the building. He stated that, when he turned around, the man was holding a pistol on two female employees in the front part of the store. The robber forced everyone to the back of the store where they were required to completely undress. Then the robber required that everyone’s hands be tied behind their backs. Mr. Thomas stated that he remained in the back room, along with two female employees and several customers, for approximately twenty minutes. He testified that about $68,-000.00 worth of jewelry was missing from the store when he and the other victims came out of the back room. On cross-examination, Thomas testified that the appellant was not the man who robbed him that day.
Marie Gilbert stated that she was employed by Michael’s Jewelers on April 2, 1977. A black male came to the store and pulled a gun on her and forced each person therein to go to the back of the store. She indicated that everyone was instructed to undress, which they did, and the black man either tied their hands behind their backs or had other victims do so. Mrs. Gilbert related that $33.00 was missing from her purse when she came out of the back room, approximately thirty minutes later.
Sherry Teet testified that she also was employed by Michael’s Jewelers on April 2, 1977. She, too, indicated that a black male came in the store, pulled a gun out of a black bag, and forced everyone to go to the storeroom in the rear of the building. The robber instructed everyone to take off their clothes, and he forced her to tape Mrs. Gilbert’s and Mr. Thomas’ hands behind their backs. Then, she testified, he forced her to go to the front of the store and fill a suitcase with watches. During this time, the black male robber was emptying trays of rings into a pillowcase. Also, she stated, this man took $27.00 from her purse.
Clyde Tarvin testified that, on April 2, 1977, around 9:20 a. m., he was in Michael’s Jewelry Store. He stated that a man pulled a gun on him, took $200.00 from his wallet, and forced him to undress in the back room.
Roberta Harville testified that she was employed by Michael’s Jewelers on April 2, 1977. She stated that, on Friday, April 1, 1977, she noticed the appellant and another black male walking up and down the sidewalk in front of the jewelry store. The two men would stop in front of the store, look in through the glass window, and then walk away. This continued for approximately ten or fifteen minutes.[1]
Connie Grant testified that, on April 2, 1977, he went into Michael’s Jewelers to pick up a ring. He stated that a black male stood up from behind the counter and pointed a pistol at him. The black male, according to Mr. Grant, forced him to undress and go to a small room in the rear of the store. Also, he took approximately $35.00 from his wallet. Mr. Grant identified State’s Exhibit I, a .357 Colt Python, as the pistol used by the black male that day. On cross-examination, he stated that the appellant was not the black male in the jewelry store on April 2, 1977.
Charles Brown, a deputy sheriff with the Marshall County Sheriff’s Department, testified that, on April 2,1977, he had received information concerning a robbery in Gadsden, Alabama, earlier that day. This information concerned the description of an automobile believed to have been used by the robber. Deputy Brown stated that he saw an automobile that afternoon which matched this description at the O.K. Tire Shop in Guntersville, Alabama, on Highway *675 431. As Deputy Brown pulled up to the automobile, one of the occupants went inside the tire store. The other occupant, who he identified as the appellant, was patted down and placed in the patrol car. He testified that he looked underneath the driver’s seat and found a .357 Magnum Colt Python hand gun. Brown stated that he arrested the appellant for not having a driver’s license and also for carrying a pistol without a permit. The appellant’s vehicle was taken to a fenced-in parking lot just outside the Sheriff’s Office in Guntersville, and there it was searched. At this time, two pillowcases with plastic ring boxes inside were found in the trunk of the appellant’s automobile.
Jim Picket, Deputy Sheriff of Marshall County, testified that, on April 2, 1977, he arrived at the O. K. Tire Store parking lot just as Officer Brown was putting the appellant in the back of his patrol car. Picket stated that the automobile driven by the appellant matched the description given in a police radio broadcast, which he had received in a report concerning a robbery in Gadsden, Alabama, earlier that day. Picket described the appellant’s automobile as a “light green GTO Tempest with a white top and two stereo speakers in the rear.”[2]
W. A. O’Bryant, a police sergeant with the City of Gadsden, testified that he participated in the investigation of the robbery of Michael’s Jewelers. He stated that, late in the afternoon of April 2, 1977, the appellant was delivered to his custody by the Marshall County Sheriff’s Department. Sergeant O’Bryant stated that the appellant was read his Miranda warnings, once in his patrol car (R. p. 68), and again at Gadsden Police Headquarters (R. p. 69). The appellant then told O’Bryant that his brother, Jerry Paschal, was the man who had robbed the jewelry store, although he admitted that he owned the automobile and pistol found therein. Sergeant O’Bryant stated that the appellant told him that he and his brother had stopped in an alley earlier this same day and discussed disposing of the watch cases (R. p. 73). Also, the appellant had $231.00 in his wallet when he was arrested.
Sergeant O’Bryant also stated that the appellant admitted having purchased a bus ticket to Boston, Massachusetts, for his brother, Jerry, two days before the robbery. Jerry Paschal was arrested in Boston when he got off the bus, and he was carrying approximately $70,000.00 in cash at this time.
The appellant then made a motion to exclude the State’s evidence, which was overruled.
Jerry Paschal, the appellant’s brother, testified that he had plead guilty to the April 2,1977, robbery of Michael’s Jewelers. He stated that the appellant had no knowledge of the robbery and that he had taken appellant’s car and pistol that morning without informing his brother. According to Paschal, he was at Michael’s Jewelry Store the day before the robbery, but the black male with him then was not the appellant.
The appellant, Eugene Paschal, testified that he did not get out of bed until around 10:00 a. m. on Saturday, April 2, 1977. He stated that he went to the store for his mother shortly after getting up and noticed that his car was gone. Eugene Paschal indicated that he talked with a Mr. Sherman Kirkland, who was walking his dog on the way to the store. After taking the bread to his mother, the appellant stated, he went across the street to a neighbor’s house and talked with two carpenters, a Mr. Curtis Hicks and a Mr. Alford Moore.
The appellant stated that, around 1:00 p. m., April 2,1977, he saw his brother for the first time that day. He stated that Jerry drove up to his mother’s house in Eugene’s ear. Eugene stated that his brother, Jerry, told him that he had borrowed his car to pick up something. The appellant, Eugene, then testified that he and his brother then drove to Guntersville to see one Johnny *676 Alexander. They drove to the O. K. Tire Store to get a tire fixed. Eugene testified that a sheriff’s car pulled into the parking lot, and that his brother, Jerry, told him that he had to go and then ran. Also, Eugene stated that he had no knowledge of his brother, Jerry, having robbed Michael’s Jewelry Store until their conversation in an alley shortly before pulling into the 0. K. Tire parking lot.
Lelia Mae Paschal, appellant’s mother, testified that, on Saturday, April 2, 1977, the appellant got out of bed around 10:00 a. m. Mrs. Paschal indicated that he went to the store for her shortly after waking up that morning.
Sherman Kirkland testified that he talked with the appellant, around 9:30 a. m., on Saturday, April 2, 1977. He stated that the appellant was going to the store for his mother when he saw him. On cross-examination, he indicated that he really was not positive that the date on which he talked with the appellant was April 2, 1977.
Wilbern Noland Mabree testified that he saw the appellant on April 2, 1977, around 10:00 a. m., at the Eastwood Market in Albertville, Alabama. On cross-examination, he stated he could not be positive that the day he saw the appellant at 10:00 a. m. was in fact April 2, 1977.
In rebuttal, the State recalled Officer O’Bryant to testify. Officer O’Bryant related that the appellant was not threatened, intimidated, coerced, and was not otherwise mistreated or tortured by him or anyone else while the appellant was in his custody. He advised that the appellant’s statement was freely and voluntarily given.
I
The appellant contends that the trial court erred in allowing the pistol and jewelry boxes, found in the appellant’s automobile, into evidence. Such articles, he asserts, were found as a result of an unlawful warrantless search of his automobile.
In Daniels v. State, 290 Ala. 316, 276 So.2d 441 (1973), Mr. Justice Bloodworth enumerates the exceptions to the Fourth Amendment’s warrant requirement in this language:
“(1) In ‘plain view,’ see Coolidge v. New Hampshire, 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971);
“(2) With ‘consent’ voluntarily, intelligently and knowingly given, see Bumper v. North Carolina, 391 U.S. 543, 88 S.Ct. 1788, 20 L.Ed.2d 797 (1968) and Johnson v. Zerbst, 304 U.S. 458, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938);
“(3) As ‘incident to a lawful arrest,’ see Abel v. United States, 362 U.S. 217, 80 S.Ct. 683, 4 L.Ed.2d 668 (1960); Draper v. United States, 358 U.S. 307, 79 S.Ct. 329, 3 L.Ed.2d 327 (1959);
“(4) In ‘hot pursuit’ or ‘emergency’ situations, see Warden v. Hayden, 387 U.S. 294, 87 S.Ct. 1642, 18 L.Ed.2d 782 (1967); Johnson v. United States, 333 U.S. 10, 68 S.Ct. 367, 92 L.Ed. 436 (1947); State v. Sutton, (Mo.1970) 454 S.W.2d 481;
“(5) Where ‘exigent circumstances’ exist coincidental with ‘probable cause’ (as in the case of movables), see Chambers v. Maroney, 399 U.S. 42, 90 S.Ct. 1975, 26 L.Ed.2d 419 (1970); and,
“(6) In ‘stop and frisk’ situations, see Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968).”
In the instant case, Marshall County Sheriff’s Deputy Charles Brown testified that he had received a report of the description of the car used in the Michael’s Jewelry Store robbery. He stated that he saw a parked car at the O. K. Tire parking lot, fitting that description.[3] As he approached the parked vehicle, one of the occupants went inside the store, hurriedly, while the other engaged an employee of the store in conversation. The officer asked the appellant for identification, which the appellant was unable to supply. Brown then arrested the appellant for driving without a license, patted him down, and placed him in the *677 patrol car.[4] See Herrín v. State, Ala.Cr. App., 349 So.2d 103, cert. denied Ala., 349 So.2d 110, and authorities therein cited; also, Dunaway v. State, 50 Ala.App. 200, 278 So.2d 200.
As he then reached under the driver’s seat of the appellant’s vehicle, he found a .357 Colt Python pistol. See Hoppins v. State, Ala.Cr.App., 337 So.2d 134; and Racine v. State, 51 Ala.App. 484, 286 So.2d 890.
He then transported the appellant and appellant’s automobile to the Marshall County Sheriff’s Office, where the appellant was placed in jail and the vehicle there searched. The appellant was also charged with carrying a concealed weapon. Campbell v. State, Ala.Cr.App., 354 So.2d 325, 1977, and authorities therein cited.
Subsequently, the other black male, appellant’s brother, Jerry, was arrested in Boston, Massachusetts, alighting from a bus.
An automobile may be searched without a warrant if the officers conducting the search have probable cause to believe that they will find the instrumentality of a crime or evidence pertaining to a crime in the suspect vehicle. This is so because of the mobile nature of an automobile. Chambers v. Maroney, 399 U.S. 42, 90 S.Ct. 1975, 26 L.Ed.2d 419. See also, Landry v. State, 56 Ala.App. 421, 321 So.2d 759. The automobile’s mobility makes the obtaining of a warrant sometimes impracticable because of the imminence of escape and/or loss of evidence. New v. State, Ala.Cr.App., 337 So.2d 1355.
The officer in this case, acting on the information at hand, had probable cause to believe that the appellant’s automobile contained the instrumentalities or fruits of a crime, and therefore was justified in making the warrantless search of the appellant’s person and of his vehicle. Authorities herein cited.
Officer Brown testified that he had just received a report concerning the Michael’s Jewelry Store robbery earlier that day, and that the automobile’s description in the report matched that of appellant’s vehicle. See Cook v. State, 56 Ala.App. 250, 320 So.2d 764 (1975); Racine v. State, supra; and Campbell v. State, supra.
Here, as in Daniels, supra, there were exigent circumstances in addition to probable cause, which justified the immediate search of appellant’s car. The vehicle was certainly movable, even though the appellant was in custody, since his brother was still in the vicinity and could have either driven the car away or destroyed evidence. At this point, there was no time in which to obtain a warrant without taking this risk that the appellant would escape with the vehicle. Therefore, the trial judge did not err in allowing results of the search of the vehicle, namely, the pistol, to be placed into evidence. Authorities herein cited.
Since there was probable cause to search the appellant and his vehicle at the scene, such also existed a short time later when the automobile was taken to the sheriff’s parking lot. The trial judge did not err in allowing the jewelry boxes found in the trunk of appellant’s car to be admitted into evidence.
In Chambers, supra, and then later in Texas v. White, 423 U.S. 67, 96 S.Ct. 304, 46 L.Ed.2d 209 (1975), the Supreme Court of the United States stated that where police officers have probable cause to search an automobile at the scene where it is stopped, they can also do so later at the station house without first obtaining a warrant. Thus, the trial court’s ruling is correct.
II
The appellant contends that the trial court erred in overruling his motion to exclude the State’s evidence, and in refusing to give the written requested general affirmative charge. The appellant asserts *678 that the State failed to present enough evidence to make out a prima facie case of robbery.
With respect to proof of aiding and abetting, a conspiracy may be proven by circumstantial or direct evidence. Muller v. State, 44 Ala.App. 637, 218 So.2d 698, cert. denied 283 Ala. 717, 218 So.2d 704.
The record reveals that evidence was presented by the State from which the jury might reasonably infer the existence of a conspiracy between the appellant and his brother.
The appellant also contends that the trial court erred on the ground that the State did not prove venue. Failure to prove venue is a matter which cannot be raised for the first time on appeal. Eagen v. State, 280 Ala. 438, 194 So.2d 842; Richardson v. State, 39 Ala.App. 207, 98 So.2d 59, cert. denied 266 Ala. 699, 98 So.2d 65.
Further, Mr. Ronald Thomas indicated at trial that the robbery occurred in Gadsden, Alabama (R. p. 21).
Ill
Finally, the appellant contends that the trial court erred in allowing the State to impeach the appellant on a collateral or immaterial issue.
Officer O’Bryant testified as to several statements made to him by the appellant which were inconsistent with the appellant’s own testimony at trial. The appellant stated that he had been mistreated and tortured by the police. In rebuttal, the State recalled Officer O’Bryant to testify. He stated that no one to his knowledge or in his presence mistreated, threatened, intimidated, coerced, or abused, or otherwise tortured the appellant.
The voluntariness therefore of appellant’s statements to Officer O’Bryant, even though not necessarily of a confessionary nature, were on a material issue. Thus, no error is shown.
We have carefully examined this record and find no error therein. The judgment is
AFFIRMED.
HARRIS, P. J., and DeCARLO, J., concur.
BOWEN, J., concurs in result.
BOOKOUT, J., dissents with opinion.

. Mrs. Harville stated that the appellant “looked like he was casing the joint, looking in.” (R. p. 36)

. Deputy Pickett testified that the description “met the description as broadcast from Gadsden.” (R. pp. 62, 63)

. Deputy Brown testified that he saw the two black males alight from the vehicle as he was turning his vehicle around. (R. pp. 48, 49)

. The appellant made a sudden turning movement, accompanied by “verbal objections as he was being arrested.” (R. p. 55)