McMILLAN, Judge.
From a conviction for the offense of attempted murder and sentence of 23 years in the State penitentiary, this appeal follows. The three issues raised on appeal question the trial court’s denial of appellant’s motion for a new trial. For the reasons outlined below, these issues are resolved adversely to the appellant, and the decision of the trial court is due to be affirmed.
Vincent Keith Bryant testified that on December 24, 1983, he had gone to a nightclub, where he saw the appellant. According to Bryant, the appellant stated: “I’m going to get you, son-of-a-bitch.” Bryant stated that he knew the appellant because they had been involved in some “disagreement” prior to this time. Around 2:30 on the morning of December 25, 1983, Bryant left the nightclub with a friend, Dennis Cornett. As they were walking up the street, they heard a car driving up behind them. Bryant turned around and recog *70 nized the appellant as the driver of the automobile. According to Bryant, the appellant got out of a white Ford Mustang automobile, holding a gun in his right hand. Bryant testified that although it was dark a street light illuminated the area and he was able to positively recognize the appellant.
According to Bryant, the appellant called out, “Vince, you mother fucker,” and then opened fire. Although the first bullet missed him, the next two shots struck Bryant twice in the back as he tried to run away. Bryant testified that the following then occurred:
“I fell to the ground; and I tried to get up but I wasn’t able to. I didn’t know I was hurt so bad, but I wasn’t able to stand up, my leg was useless. And as I started getting back up I tried to — I told him to throw down the gun and come fight like a man, and he started walking over towards me with the gun. And [Dennis Cornett] said, ‘Vince, get down.’ So I laid — when I seen him coming over with the gun I laid back down because I thought he was going to shoot me in the head or something. So I went ahead and laid back down like I was dead. That’s when he turned around, ran, jumped back in the car, and they proceeded to leave.”
Bryant testified that as a result of the assault he was hospitalized for a total of two weeks while he underwent two operations and that he required three weeks of rehabilitation. As a result of the shooting, Bryant lost approximately 50 pounds and became permanently disabled. Bryant stated he was “definitely” sure that the appellant was the person who shot him.
Michael Ray Hood, Phenix City Police Officer, arrived on the scene and discovered Bryant lying in the road in “extreme pain.” Bryant told Officer Hood that the person who had shot him was driving either a Mustang, a Charger, or a Challenger automobile. Boyd Battles, Phenix City Police Officer, testified that Bryant was obviously in a great deal of pain but was able to identify his assailant by the name of “David.” Clifton Wayne Smith, Phenix City Police Department, testified that Bryant positively identified the appellant as his assailant. Based on the victim’s identification, an arrest warrant was issued for the appellant.
On December 27, 1983, Steve Purvis, Phenix City Police Department, went to the appellant’s residence to make the arrest. The appellant’s wife answered the door and told Purvis that the appellant was not there. She did, however, give permission to Purvis to “look around.” While Purvis was inspecting the house, he discovered the appellant hiding behind the bathroom door.
On behalf of the appellant, Thurmond Kinney testified that, on the night in question, he was with the appellant, but he stated that no shooting occurred. According to the witness, he had known the appellant’s mother for approximately 22 years. Also for the appellant, Glynn Woodall, the appellant’s brother, testified that the appellant’s Mustang was not in working order on the night in question and was not repaired until the day after Christmas.
The appellant’s wife, Margaret Woodard, testified that she was with the appellant on the night in question. She said that after drinking and dancing at the nightclub, she and the appellant went straight home and went to bed. According to the witness, she did not see her husband shoot anyone. On cross-examination, the witness admitted that she received a broken nose as the result of a “little marital dispute” with the appellant. The witness also admitted that she lied to the police when they came to arrest her husband because she was “scared.”
The appellant’s mother, Margaret Ann Osborne, testified that, on the night in question, she was with the appellant at the nightclub. Afterward, she said, they all went straight home together. According to Mrs. Osborne, at one time she had dated Bryant but subsequently refused to see him any more.
The appellant took the stand in his own defense and testified that on the night of December 24, 1983, he went to the Jacopa *71 Club with his mother, his wife, and his brother. Because his Mustang needed repairs, the appellant said they drove to the club in his brother’s orange Dodge Challenger. The appellant denied that he said anything to Bryant at the nightclub. According to the appellant, he went straight home when he left the nightclub. The appellant also denied that he saw Bryant on the way home or tried to kill him. The appellant stated that he had known the victim for approximately two years.
Based on the testimony, portions of which are outlined above, the jury returned a verdict of guilty as charged in the indictment. The trial court then sentenced the appellant to 23 years in the State penitentiary. After defense counsel filed a motion for a new trial, the trial court scheduled a hearing. On January 15, 1985, testimony was presented in support of the motion. The trial court denied the motion and defense counsel filed a “motion for reconsideration.” The trial court allowed additional testimony to be taken in open court on March 8, 1985, but subsequently denied the motion for reconsideration. From the appellant’s conviction and sentence, this appeal follows. On appeal, Woodard raises three issues.
I
The first issue concerns the trial court’s failure to grant the appellant’s motion for a new trial based on “newly discovered evidence.” As a threshold consideration, this court has repeatedly stated that the granting or denial of a motion for a new trial is a matter within the sound discretion of the trial court. Davis v. State, 457 So.2d 992 (Ala.Cr.App.1984); Waldrop v. State, 448 So.2d 490 (Ala.Cr.App.1984); Smiley v. State, 435 So.2d 202 (Ala.Cr.App.1983). In reviewing the trial court’s decision, this court will indulge every presumption in favor of the correctness thereof. Moore v. State, 457 So.2d 981 (Ala.Cr.App.1984), cert. denied, Moore v. Alabama, — U.S. -, 105 S.Ct. 1757, 84 L.Ed.2d 820 (1985); Grace v. State, 445 So.2d 976 (Ala.Cr.App.1983); Ward v. State, 440 So.2d 1227 (Ala. Cr.App.1983); Allen v. State, 382 So.2d 11 (Ala.Cr.App.1979), cert. denied, 382 So.2d 25 (Ala.), cert. denied, 449 U.S. 843, 101 S.Ct. 125, 66 L.Ed.2d 52 (1980).
Absent an abuse of discretion, this court will not disturb the trial court’s decision to grant or deny a motion for new trial. Perry v. State, 455 So.2d 999 (Ala.Cr.App.1984). To be entitled to a new trial, however, the defendant must meet the following burden:
“In order for a new trial to be granted on newly discovered evidence, the mov-ant must show that the proffered evidence could not have' been discovered before trial by use of diligence, that it was material and competent, not merely cumulative, and will probably change the result.” Thompson v. State, 418 So.2d 226, 229 (Ala.Cr.App.1982).
Where the moving party fails to meet these requirements, the trial court may properly deny the motion. Barnes v. State, 415 So.2d 1217 (Ala.Cr.App.1982).
In the present case, the “newly discovered evidence” offered in support of the motion for new trial consisted of the testimony of Dennis Cornett (an eyewitness to the assault) and testimony concerning the “lighting conditions” at the time of the assault. At the hearing, the appellant argued that photographs of the scene of the crime which were introduced into evidence at trial were inaccurate. According to the appellant, the power poles and lighting fixtures shown in the photographs used at trial were not installed until March of 1984, some three months after the shooting occurred. Although appellant argues otherwise, it is apparent that this evidence could have been discovered with “due diligence” prior to trial, in the course of preparing the defense of the case. It is also apparent that this evidence would not have “changed the result” of the trial.
In support of his position that a new trial should have been granted, the appellant also presented testimony from an eyewitness to the events in question. At the hearing on the motion for new trial, Dennis Cornett testified that he had been drinking *72 “quite a bit” on the night in question. According to Cornett, he left the nightclub with Bryant. As they were walking home, Cornett heard shots being fired and heard Bryant yell “Run!” Cornett testified that he did not see who did the shooting. In fact, all Cornett saw were “headlights.” Cornett also stated: “[0]n top of that I was drunk. I couldn’t even identify my own mother if I had to.” Cornett also stated that the scene of the crime was illuminated by street lights in the area. At the time of the jury trial, Cornett was working on a construction job in Fort Walton Beach, Florida. According to Cornett, no one contacted him to testify at appellant’s trial.
Here, as in Baker v. State, 477 So.2d 496 (Ala.Cr.App.1985), it is apparent that the appellant failed to carry his burden of proof because he did not establish that the testimony of this witness would have “changed the result of trial and would have prevented a conviction.” Additionally, no mention of this witness was made prior to trial and his presence was apparently requested for the first time on the motion for new trial. Under similar facts, this court has noted as follows:
“The issue in this regard was settled by the case of Vinet v. State, 38 Ala. App. 299, 301, 83 So.2d 357, cert. denied, 263 Ala. 701, 83 So.2d 359 (1955), wherein the court held that the matter .of a defendant’s absent witness could not be raised for the first time by motion for new trial, where the defendant had rested his case without requesting any compulsory process for attendance of the witness, had not moved for any delay in the trial proceedings and had not requested that he be allowed showings on the testimony of the absent witness. To permit this matter to be raised for the first time by a motion for new trial where the existence of witnesses was known before trial would be to allow the defendant to speculate on the verdict of the jury. Jarrell v. State, 355 So.2d 747, 750 (Ala.Cr.App.1978).”
See also: McMullin v. State, 442 So.2d 155, 161 (Ala.Cr.App.1983); Livingston v. State, 419 So.2d 270, 273 (Ala.Cr.App.1982); Sanders v. State, 392 So.2d 1280, 1284 (Ala.Cr.App.1980).
The appellant failed to establish that the additional testimony could not have been discovered prior to trial with “due diligence” and additionally failed to establish that the evidence was material and would have changed the result of the trial. For these reasons, it is apparent that the trial court did not abuse its discretion when it overruled the motion for a new trial. Watson v. State, 389 So.2d 961 (Ala.Cr.App. 1980).
II
The second issue raised on appeal concerns the admission into evidence of a diagram which was labeled “scene of the alleged murder of Vincent Bryant.” According to the appellant, he is entitled to a new trial because the caption on the exhibit “contained prejudicial and inflammatory terms of such magnitude that they exceeded its probative value and violated constitutional safeguards of justice.” Even assuming that such prejudice actually exists, however, this issue has not been preserved for appellate review. When the State moved to introduce the exhibit into evidence, defense counsel stated: “No objection.” Since an adverse ruling is a “preliminary requirement to preservation of error for appellate review,” this issue has not been properly presented to this court. Trawick v. State, 431 So.2d 574, 578 (Ala.Cr.App.1983).
Additionally, an alleged error in the admission of evidence cannot, ordinarily, be raised for the first time by motion for a new trial. Smith v. State, 393 So.2d 529 (Ala.Cr.App.1981); Daly v. State, 47 Ala. App. 681, 260 So.2d 412, cert. denied, 228 Ala. 736, 260 So.2d 418 (1972), cert. denied, 409 U.S. 874, 93 S.Ct. 123, 34 L.Ed.2d 127 (1972); Smith v. State, 40 Ala.App. 600, 119 So.2d 202, cert. denied, 270 Ala. 741, 119 So.2d 203 (1960). The general rule has been stated as follows:
*73 “Although courts have sometimes departed from this rule, generally, in analogy to the rule limiting the scope of review on appeal to questions raised below, a new trial will not be granted for matters pertaining to rulings, evidence, or occurrences at a trial, including erroneous conduct on the part of the court,, counsel, or jury, unless timely and sufficient objections, requests, motions or exceptions have been made and taken. Any grounds which might have been afforded by such matters are presumed to have been waived, except where such matters were unknown to applicant until after verdict and could not have been discovered by the exercise of reasonable dilligence, and except in instances of fundamental errors which of themselves invalidate the trial. [Citations omitted].” Leverett v. State, 462 So.2d 972, 979 (Ala.Cr.App.1984).
Here, as in Leverett, it is apparent that the evidence presented at the hearing on the motion for new trial does not come within either the “newly discovered evidence” exception or the “fundamental error” exception to this general rule. Thus, the motion for a new trial was properly denied.
Ill
The third issue raised by the appellant concerns the conduct of the trial court at the hearing on the defense motion for a new trial. At the hearing, defense counsel asked some of the jurors whether additional evidence concerning lighting conditions at the scene of the crime would have been “relevant, in your opinion, as a juror.” The trial court sustained the State’s objections to the questions and the jurors were not allowed to answer. Appellant argues that the testimony from the jurors would have supported his motion for a new trial.
As a general rule, “a juror may not testify to an occurrence in the jury room amongst themselves for the purpose of impeaching their verdict [citations omitted].” Garraway v. State, 337 So.2d 1349, 1353 (Ala.Cr.App.1976). Other rules which apply to any inquiry into jury deliberations can be stated as follows:
“After a case has been submitted to the jury, their deliberations in the jury room are not subject to review. [Citations omitted.] Public policy forbids that a juror disclose deliberations in the jury room and demands that they be kept secret. [Citations omitted.] Permitting such impeachment would open the door for tampering with the jury after the return of their verdict. [Citation omitted.]” Atwell v. State, 354 So.2d 30, 37 (Ala.Cr.App.1977), cert. denied, 354 So.2d 39 (Ala.1978).
Here, as in Atwell, the appellant’s attempt to impeach the jury’s verdict by showing the “mental operation” of the jurors was “improper and not subject to judicial recognition.” Id. As this court noted in Scanland v. State, 473 So.2d 1182 (Ala.Cr.App.1985), our review of the record “does not indicate that the events complained of by appellant had any bearing on his trial.” Thus, the motion for new trial was properly denied.
AFFIRMED.
All the Judges concur.